IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson

Civil Action No. 21-cv-01966-RBJ

SUZANNE C. LEE, individually, and in her capacity as trustee as an irrevocable trust for benefit of trustee TARAROSE LEE, also known as TARAROSE LEE 2009 IRREVOCALE TRUST, and TARAROSE LEE,

    Plaintiffs,

v.

RICHARD HURD,

    Defendant.

## ORDER ON DEFENDANT'S MOTION TO DISMISS AND TO STRIKE

Plaintiff Suzanne Lee is suing her ex-husband, Defendant Richard Hurd, for money and property to which she claims an entitlement. Ms. Lee sued in both her personal capacity and as trustee of an irrevocable trust for her daughter, TaraRose Lee, who is also a co-plaintiff.[1] Defendant moved to dismiss the first two claims and to strike portions of the amended complaint. ECF No. 22. For the reasons stated below, that motion is DENIED.

### I. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

---

[1] This order refers to Suzanne Lee as "Ms. Lee" and to TaraRose Lee as "TaraRose."

570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the complaint's well-pled allegations and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, she has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). The Court may consider evidence beyond the complaint without converting a motion to dismiss to one for summary judgment if the documents are central to the claims, referred to in the complaint, and if the parties do not dispute their authenticity. *City. of Santa Fe, N.M. v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002).

## II.     BACKGROUND

The following factual allegations are taken from plaintiffs' Amended Complaint, ECF No. 16, and presumed true solely for purposes of this motion. *See Robbins*, 300 F.3d at 1210. Ms. Lee and Mr. Hurd married in 1998. ECF No. 16 at ¶ 26. Shortly thereafter, they moved to Colorado and found their "dream home," a ranch located at 145 Highway 15666 Railroad Avenue, Dolores, Colorado (the "Property"). *Id.* at ¶¶ 6, 27–29. The dream ended there. Mr. Hurd's father, Charles, promised to purchase the Property for the married couple but instead titled it in his own name.[2] *Id.* at ¶¶ 30–33. Ms. Lee was concerned — she wanted and expected the financial security that would come from owning the Property. *Id.* at ¶ 35. Mr. Hurd's

---

[2] All references to the property's title include title in the water rights.

reaction to his father's holding title further unsettled Ms. Lee.  On the one hand, Mr. Hurd promised to hold the property with Ms. Lee as joint tenants with a right of survivorship.  *Id.* at ¶ 32.  On the other hand, he told Ms. Lee to wait patiently for his father to transfer title, fought with his wife about the Property's legal title, and permitted his father to move in with the couple and "undermine the marital bonds that Richard and Suzanne were attempting to build."  *Id.* at ¶¶32, 36–41.  "[A]s a direct result of the lack of trust and lack of financial security due to Charles' and Richard's refusal to title the Property in Suzanne's name," Ms. Lee filed for divorce.  *Id.* at ¶ 43.  She moved home to New Mexico in May 2002.

Mr. Hurd convinced Ms. Lee to reconcile.  *Id.* at ¶¶ 46–52.  Ms. Lee, relying on Mr. Hurd's promises to convey her the Property and assured of the fact that Charles had moved out, sold her New Mexico home and moved back to the Property in August 2002.  *Id.* at ¶¶ 50–52.  Mr. Hurd and Ms. Lee bought a truck together, and Ms. Lee bought a nearby house for her ailing mother.  *Id.* at ¶¶ 53–54, 64.  Ms. Lee became pregnant with the couple's daughter, TaraRose.  *Id.* at ¶¶ 55–56.

The relationship was going well, and the parties executed three documents to formalize their financial union in anticipation of marriage or extended cohabitation.  *Id.* at ¶¶ 56–57.  The first, entitled "premarital agreement," explained that "the parties desire[d] to enter into an agreement regarding certain properties . . . include[ing] the farm property in Montezuma County, Colorado presently titled in the name of Charles Hurd, the father of [Richard]."[3]  *Id.* at ¶¶60, 63.

---

[3] Plaintiffs did not attach the premarital agreement to their complaint.  I believe it would be proper for me to consider the agreement at this stage because it is central to the claims, referred to in the complaint, and apparently public record.  *See City of Santa Fe*, 311 F.3d at 1035.  However, because I was unable to locate the agreement through internet searches, my references to its contents are taken from the amended complaint.  *See, e.g.*, ECF No. 22 at ¶ 63 (purporting to quote and describe the premarital agreement).

The second was a "Lee/Hurd Horse Partnership Agreement" that evenly divided interests in a horse breeding operation. *Id.* at ¶¶ 60, 105.

The third document — and the most important — is a quitclaim deed dated April 7th, 2003 (the "2003 quitclaim deed"). ECF No. 2-1. This deed states that Richard Hurd conveyed and "quit claimed" "all the right, title, interest, claim, and demand" that he had in the Property to Richard Hurd and Suzanne Lee as joint tenants with a right of survivorship. *Id.* The grant was made in consideration for "love and affection." *Id.* It made no express warranties.[4]

The parties did not remarry, but they lived together at the Property for a few years with their young daughter, TaraRose. ECF No. 16 at ¶¶ 65–74. The relationship ended in 2006. *Id.* at ¶ 75. Mr. Hurd initially sought 50/50 parenting time with TaraRose, indicated that he would seek full custody of TaraRose, and ended up having visitation rights through 2008. Ms. Lee and TaraRose moved to Texas in 2006 and then, in 2012, to Missouri, where they currently reside. Ms. Lee set up an irrevocable trust for TaraRose in 2009.

In 2013, Charles Hurd, defendant's father, transferred his interest in the Property to defendant by quitclaim deed. ECF No. 2-2 (the "2013 quitclaim deed"). The 2013 quitclaim deed named only defendant Richard Hurd as grantee. *Id.* But plaintiffs believe that earlier agreements like the 2003 quitclaim deed — with which Richard Hurd conveyed his interest to Richard Hurd and Ms. Lee as joint tenants with a right of survivorship — meant that Ms. Lee received half of Mr. Hurd's interest when Charles conveyed the Property in 2013. *See* ECF No.

---

[4] The amended complaint states that the premarital agreement obligated defendant to execute the 2003 quitclaim deed. ECF No. 16 at ¶ 63. The premarital agreement also obligated Ms. Lee to execute a will in which she split the property between defendant's previous children and the future children she and defendant would have together. Ms. Lee executed this will on the same day Mr. Hurd executed the 2003 quitclaim deed. *Id.* at ¶ 61.

16 at ¶ 82.  Shortly after the 2013 quitclaim deed, Ms. Lee transferred her interest in the property to TaraRose's trust, which eventually transferred it to plaintiff TaraRose.  *Id.* at ¶¶ 83, 85.

Plaintiffs commenced this action on July 20, 2021.  ECF No. 1.  Their amended complaint contains four claims: First, plaintiffs bring a quiet title action in which they seek a judicial declaration that one or more of the plaintiffs owns half of the Property.  They rely on the 2003 quitclaim deed, the common law doctrine of estoppel by deed, and Colorado's common law after-acquired property doctrine.  Second, plaintiffs bring a partition action in which they request that the Court order the Property be sold and the proceeds divided between the parties.  Third, plaintiffs assert a contract claim in which they seek money allegedly owed under the Horse Partnership Agreement.  Finally, Ms. Lee requests the Court order Mr. Hurd pay her child support payments for the time TaraRose was a minor.  ECF No. 16 at ¶¶ 87–125.

Defendant moved to dismiss the first two claims pursuant to Fed. R. Civ. P. 12(b)(6).  ECF No. 22.  He also requests this Court strike large portions of the amended complaint as impertinent and immaterial under Rule 12(f).

### III.   DISCUSSION

#### A.  Jurisdiction

I first consider whether this Court has subject matter jurisdiction.  Although defendant did not raise a jurisdictional objection in his motion, I must consider it *sua sponte*.  *Boechler, P.C. v. Comm'r of Internal Revenue*, 142 S. Ct. 1493, 1497 (2022) ("Jurisdictional requirements cannot be waived or forfeited, must be raised by courts *sua sponte*, and . . . do not allow for equitable exceptions.").

Diversity jurisdiction, codified at 28 U.S.C. § 1332, confers upon this Court subject matter jurisdiction to adjudicate claims one, two, and three (quiet title, partition sale, and horse partnership contract). All three claims concern citizens of different states, amounts in controversy above $75,000, and valid state-court causes of action. *See* Colo. R. Civ. P. 105 (authorizing suits to quiet title); Colo. Rev. Stat. § 38-28-101 (partition).[5]

The Court does not have jurisdiction to consider plaintiffs' child-support claim (claim four). A "long-entrenched" exception to congressional jurisdiction-granting statutes prevents this Court from considering domestic-relations cases. *Wyttenbach v. Parrish*, 496 F. App'x 796, 797 (10th Cir. 2012) (unpublished). In explaining this jurisdictional carveout, the Supreme Court has stated that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (internal quotations omitted).

Plaintiffs claim that their child-support claim does not fall within the domestic relations exception because they do not seek one of the three remedies the Supreme Court mentioned by name. ECF No. 16 at ¶ 13 (quoting *Ankenbrandt*'s statement that the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees." 504 U.S. at 703). Tenth Circuit caselaw forecloses this argument. In *Vaughan v. Smithson*, 883 F.2d 63 (10th Cir. 1989), the Tenth Circuit held that the domestic-relations

---

[5] Even though the quiet title claim seeks a property interest that exceeds the $75,000 jurisdictional threshold, *see* 28 U.S.C. § 1332, one might view the action to quiet title, which seeks a declaratory judgment, as requesting non-monetary relief. Even on this view, however, this Court would have supplemental jurisdiction over plaintiffs' first claim because it "forms part of the same case or controversy" as plaintiffs' second claim, which requests partition and sale of the property. 28 U.S.C. § 1367.

6

exception applies "[i]f the federal court is called upon to decide those issues regularly decided in state court domestic relations actions such as divorce, alimony, child custody, *or the support obligations of a spouse or parent*." *Id.* at 65 (emphasis added).  Plaintiffs might argue that the Supreme Court narrowed *Vaughan*'s broad construction of the domestic-relations exception. *Ankenbrandt*, decided three years after *Vaughan*, mentioned only divorce, alimony, and child custody disputes when describing the domestic-relations exception.  504 U.S. at 703.  Such an argument would misread the Supreme Court's decision.  *Ankenbrandt*'s "conclusion [was] rooted in respect for this long-held understanding [of the domestic-relations exception]."  *Id.*  It cannot be read to have narrowed or displaced *Vaughan*, which defines the contours of the "long-held understanding" that *Ankenbrandt* canonized.  I find that child support payments fall within the domestic-relations exception and the Court therefore does not have original jurisdiction to consider the child support claim.

Nor does the Court have supplemental jurisdiction under 28 U.S.C. § 1367.  That statute applies only to claims "so related" within the Court's jurisdiction "that they form part of the same case or controversy under Article III of the United States Constitution."  *Id.*  "A claim is part of the same case or controversy if it 'derive[s] from a common nucleus of operative fact.'"  *Price v. Wolford*, 608 F.3d 698, 702–03 (10th Cir. 2010) (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997)).  The child support claims do not form part of the same case or controversy as the property and contract claims.  The latter claims concern 2003 agreements to share interest in the Property (claims one and two) and the horse-breeding operation (claim three).  The child support claim concerns non-payment of statutory child-

support obligations between 2006 and 2021. The parties are the same, but the controversies are distinct. Claim four is dismissed for lack of jurisdiction.

### B. Defendant's Motion to Dismiss

Plaintiffs' amended complaint claims a one-half undivided interest in the Property.[6] ECF No. 16 at ¶ 90. Plaintiffs allege that "the common law doctrine of estoppel by deed, and Colorado's common law after acquired property doctrine" made Ms. Lee a co-owner of the Property in 2013 — when Charles transferred title to his son Richard — because the 2003 quitclaim deed and the premarital agreement transferred Mr. Hurd's after-acquired property. *Id.* at ¶ 82.

Defendant argues that estoppel by deed and Colorado's common law after-acquired property doctrine do not apply to quitclaim deeds like the 2003 deed and requests dismissal of plaintiffs' first and second claims. Defendant's argument begins with a claim that Colorado codified its common law after-acquired property doctrine. *See* Colo. Rev. Stat. § 38-30-104. Therefore, reasons defendant, the common law doctrine cannot entitle plaintiffs to a property interest that C.R.S. § 38-30-104 does not. Defendant notes that Colorado courts have made clear that quitclaim deeds fall outside the ambit of C.R.S. § 38-30-104. *See Premier Bank v. Bd. of Cnty. Comm'rs*, 214 P.3d 574, 578 (Colo. App. 2009) (holding that § 38-30-104 "does not apply to quitclaim transactions"). Defendant thus concludes that the 2003 quitclaim deed also falls outside the ambit of Colorado's common law after-acquired property doctrine.

---

[6] Plaintiffs allege in the alternative that Ms. Lee holds a one-half interest in the property either individually, as a joint tenant with Richard, or as a trustee for TaraRose. ECF No. 16 at ¶ 91.

Plaintiffs respond that common law doctrine is different than the statute. Citing state-court cases, plaintiffs claim that the statute codified only part of the common law doctrine and did not abrogate the remainder of the doctrine. According to plaintiffs, the common law doctrine conveys after-acquired property when the parties intended such a conveyance, even when they memorialized their agreement with a quitclaim deed. Plaintiffs argue that the 2003 quitclaim deed, the premarital agreement, and Ms. Lee's reliance on the 2003 quitclaim deed when she moved back in with Mr. Hurd show that Mr. Hurd and Ms. Lee intended the 2003 quitclaim deed to convey half of Mr. Hurd's after-acquired interest.

I find that plaintiffs have stated a claim. As a preliminary matter, the common law after-acquired interest doctrine remains viable and distinct. As a Colorado court recently held, "[C.R.S.] section 38-30-104 does not abrogate the common law." *Amada Fam. Ltd. P'ship v. Pomeroy*, 2021 COA 73, ¶ 35, 494 P.3d 633, 643 (2021).

Before analyzing the claim, some background on conveyances: Ms. Lee received her alleged interest via the 2003 quitclaim deed. The most common deed is a warranty deed, which purports to convey property by warranting that the grantor has legal title in the property conveyed. Quitclaim deeds are different. They purport to convey not a property itself but only a grantor's interest — if any — in the property. *See* 2 Colo. Prac., Methods of Prac. § 64:2. Types of Deeds (7th ed.). As a general rule, "a quitclaim deed . . . is ineffectual to pass to the grantee any title or right acquired by the grantor subsequent to execution." *Tuttle v. Burrows*, 852 P.2d 1314, 1316 (Colo. App. 1992) (emphasis omitted).

If the 2003 quitclaim deed were the only basis for plaintiffs' claim, that would be the end of the matter because quitclaim deeds make no warranty of title. But Colorado's common law

9

after-acquired interest doctrine applies in another situation as well.  The doctrine will convey after-acquired property interests both in cases of implied warranty, and also where the intent to convey after-acquired interests is found in "an express covenant in a contract or instrument of conveyance."  *Amada*, 2021 COA at ¶ 37, 494 P.3d at 643.  In *Amada*, the court found a quitclaim deed sufficient to convey after-acquired property because the deed "expressly promise[d] the transfer of an after-acquired [interest]." *Id.* at ¶ 38.  Here, plaintiffs allege that the premarital agreement, a contract executed contemporaneously with the 2003 quitclaim deed, acknowledged that Richard did not yet own the property but expressly promised Suzanne an interest when Charles conveyed the property to Richard.  ECF No. 16 at ¶ 63.  This "express covenant in a contract" brings a quitclaim deed within the common law after-acquired interest doctrine.  *Amada*, 494 P.3d at 643.  If Ms. Lee can point to a contract that expressly promised her one half of Richard's after-acquired interest, she will be entitled to the relief she seeks.  I therefore find that she has stated a claim and deny defendant's 12(b)(6) motion.

C. **Defendant's Motion to Strike Portions of the Complaint**

The Court has discretion under Fed. R. Civ. P. 12(f) to strike "redundant, immaterial, impertinent, or scandalous matter."  Defendants also ask the Court to strike paragraphs 25–54, 57–59, 61, 63, 65–70, 73–80, and 84 of the amended complaint — essentially plaintiffs' entire recitation of this case's factual background.  ECF No. 22 at pp. 6–7.  Defendant claims that plaintiffs' facts are "immaterial" because they "have no legal significance," were included "simply to engender sympathy" for plaintiffs, and might "prejudice the ultimate factfinder."  ECF No. 22 at p. 7.

10

Motions to strike are generally disfavored. *See Colo. Milling & Elevator Co. v. Howbert*, 57 F.2d 769, 771 (10th Cir. 1932) ("[T]he court should proceed with extreme caution in striking a pleading."). "[A]ny doubt as to the striking of a matter in a pleading should be resolved in favor of the pleading." *MRSI Intern., Inc. v. Bluespan, Inc.*, 2006 WL 2711791, at *1 (D. Utah 2006) (unpublished).

Defendant has not convinced me to strike the vast majority of plaintiffs' amended complaint. Defendant spends all of two paragraphs — one in their motion and one in their reply — arguing for this disfavored remedy. He professes concern that plaintiffs will "argue based on this legally irrelevant and potentially prejudicial material." ECF No. 26 at p. 5. As litigation proceeds, I will sustain objections to irrelevant or impermissibly prejudicial arguments. I will not take an axe to plaintiffs' amended complaint.

## IV.   ORDER

It saddens me to see such venomous litigation between two people who once loved each other and brought a child into this world together. Once again, I admonish the parties to "sit down with each other like mature adults and resolve this spat in the spirit of the bond that you once had." ECF No. 15. But for now, defendant's motion to dismiss and to strike (ECF No. 22) is DENIED. Further, plaintiffs' fourth claim is DISMISSED for lack of jurisdiction.

DATED this 13th day of July, 2022.

BY THE COURT:

_____
R. Brooke Jackson
Senior United States District Judge